## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| KENYATTA BROWN, #K79185, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 24-cv-02350-SMY |
| | ) | |
| COREY LAUER, | ) | |
| MARCELUS OTTENSMEIER, G. CURRY, | ) | |
| JEROD SCHANZ, DEVIN McKINNEY, | ) | |
| SPILLER, NATHAN McCARTHY, | ) | |
| LUCAS BOHNERT, ROBBINS, | ) | |
| JOSHUA SCHOENBECK, | ) | |
| ANTHONY WILLS, SANDY WALKER, | ) | |
| SHAMONEY, and | ) | |
| JOHN DOES 1-4 (Menard Intel/Internal | ) | |
| Affairs), | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**YANDLE, Chief Judge:**

Plaintiff Kenyatta Brown, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Lawrence Correctional Center, filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights that occurred while he was confined at Menard Correctional Center. He claims he was the target of multiple incidents of retaliation for filing lawsuits and complaints, and seeks injunctive relief as well as monetary damages. (Doc. 1).[1]

This case is now before the Court for preliminary review of the Complaint under 28 U.S.C. § 1915A, which requires the Court to screen prisoner Complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). Any portion of the Complaint that is legally frivolous, malicious,

---

[1] Plaintiff's motion for temporary injunctive relief was denied on November 8, 2024 (Doc. 6).

fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

## The Complaint

Plaintiff makes the following allegations in the Complaint (Doc. 1): Plaintiff was transferred to Menard in January 2020. Later that year, he filed a lawsuit alleging harassment by multiple Menard officials, including a number of Intelligence/Internal Affairs officers ("Intel/I.A."), because he refused to cut his dreadlocks, *Brown v. Childs*, Case No. 20-cv-1348-RJD (S.D. Ill. filed Dec. 17, 2020). (Doc. 1, p. 18). After the defendants in that case received notice of its filing in May 2021, Plaintiff experienced retaliation including the filing of false charges against him for conspiracy regarding drugs/drug paraphernalia and conspiracy to commit staff assault. He was found guilty and served 90 days in restricted housing for each ticket; from July 2021 through October 2021, and December 2021 through March 2022 (Doc. 1, p. 18).[2] Plaintiff filed several grievances against Intel/I.A. officers over these charges and other acts of retaliation.

Defendants Lauer, Ottensmeier, Curry, Bohnert, Schoenbeck, Wills, and John Doe Intel/I.A. Officer #1 conspired to retaliate against Plaintiff by tampering with his mail, blocking his electronic messages, sending him to restrictive housing, ransacking his cell, and filing petty disciplinary charges on him. In response to Plaintiff's punishment on the 2021 disciplinary charges, Plaintiff's friend Marcia Hatton carried out a peaceful online "awareness campaign" to publicize the retaliation against Plaintiff. The campaign prompted phone calls to Menard and to IDOC headquarters as well as peaceful protests and rallies. Plaintiff was on "mail watch" by

---

[2] Plaintiff is pursuing retaliation and due process claims related to these disciplinary tickets and other alleged misconduct that occurred between May 2021 and December 2021 in another lawsuit, *Brown v. Ottensmeier, et al.*, Case No. 23-cv-04057-MAB (S.D. Ill. filed Dec. 28, 2023).

Intel/I.A. to monitor his correspondence.  Plaintiff's correspondence with Ms. Hatton focused on obtaining lab reports to refute the drug charges against him.

In February and/or March 2022, Plaintiff asked Defendant Warden Wills to stop the Intel/I.A. defendants' retaliatory delays and non-delivery of his mail (Doc. 1, p. 20).  Wills did not intervene despite saying he would review the matter.

In May 2022, Ms. Hatton got a response to her Freedom of Information Act ("FOIA") request to the Illinois State Police for drug test results on the photos that prompted the false drug charge.  Plaintiff received Ms. Hatton's electronic message that she got the FOIA information (Doc. 1, p. 21; Doc. 1-1, pp. 7, 11-12).  The same day, Plaintiff learned Intel/I.A. blocked a message from his sister.  Hours later, Defendant John Doe #1 ransacked Plaintiff's cell.  Defendant Curry (Intel/I.A.) then moved Plaintiff to restricted housing under investigation.  Plaintiff had a nervous breakdown and suicidal thoughts, fearing more retaliation by the Intel/I.A. defendants (Doc. 1, p. 22; Doc. 1-2, pp. 2-3).

About five days later, Defendants Ottensmeier and Lauer (Lead Intel/I.A. Officer) interviewed Plaintiff for two hours, telling him he was under investigation because of an electronic message he sent to a woman containing the phrase "on blast," which they interpreted to mean putting out a gang "hit."  Plaintiff denied this, explaining he used the phrase in reference to "expos[ing] the person" referenced in the message (Doc. 1, p. 22; Doc. 1-2, pp. 3-4).  Plaintiff said he knew the investigation was about the FOIA message and he was seeking the lab reports to prove the drug charge was false and remove it from his record.  Lauer replied he knew the charge was false and didn't know why it remained on Plaintiff's record. Lauer said if Plaintiff would "leave things be" there would be no issues like petty or false charges.  *Id.*  Plaintiff understood the statements to mean the officers would leave him alone if he discontinued the awareness campaign

and stopped filing complaints (Doc. 1, p. 23; Doc. 1-2, pp. 4-5).  He was released from restricted housing a few days later with no disciplinary charges filed.

Plaintiff told Ms. Hatton to quit the awareness campaign, but she continued it over his objection.  On June 11, 2022, she sent Plaintiff a message about a planned gathering with the IDOC Director to expose the mistreatment and seek Plaintiff's transfer to another prison (Doc. 1, p. 23; Doc. 1-1, pp. 15-16; Doc. 1-2, p. 6).  Plaintiff, knowing that Intel/I.A. was monitoring his correspondence, messaged Ms. Hatton asking her to discontinue her efforts.  The next day, Defendant Bohnert (Intel/I.A.) issued Plaintiff a disciplinary report for the petty charge of using another prisoner's phone PIN number.  Lauer and Ottensmeier had threatened such discipline if Plaintiff did not cease his campaign/complaints.  Plaintiff interpreted the charge as a "warning" to get his supporters to quit their campaign.  This was Plaintiff's first charge for a PIN infraction even though he had "continuously committed" this offense, which is rarely enforced (Doc. 1, p. 25; Doc. 1-2, p. 6).  Defendant Schoenbeck conducted the hearing on this ticket and gave Plaintiff a verbal reprimand.  Plaintiff again asked his loved ones to discontinue their campaign and stopped filing grievances out of fear of retaliation.

During Plaintiff's two-hour interview in May 2022 with Lauer and Ottensmeier, Ottensmeier asked Plaintiff whether he had ever been accused of being a "snitch" (Doc. 1, pp. 25-26; Doc. 1-2, pp. 7-8).  Between the May 2022 interview and October 2023, I.A. called Plaintiff for ten supposedly random interviews, mostly on incidents he had nothing to do with.  This frequency caused several prisoners to suspect him of being an informant and he became fearful for his safety (Doc. 1, p. 26; Doc. 1-1, pp. 19-21; Doc. 1-2, p. 8).  In his two-and-a-half years at Menard, Plaintiff had only previously been interviewed by Intel/I.A. three or four times.  He believed the interviews were calculated to purposely endanger him.

4

After May 2022 and continuing through January 2023, Lauer, Ottensmeier, and Bohnert continued to retaliate against Plaintiff for the awareness campaign and his previous complaints by delaying his mail delivery for three or more weeks and blacklisting him from obtaining a prison job (Doc. 1, pp. 27-28; Doc. 1-2, pp. 8-9). Wills failed to intervene to stop this retaliation.

On May 15, 2023, Plaintiff attended a settlement conference on the case he filed against several Intel/I.A. officers in *Brown v. Childs*, No. 20-cv-1348-RJD (Doc. 1, p. 29). Plaintiff did not want money and agreed with his attorney to settle the case only if the 2021 false drug charges brought by Intel/I.A. Frazier were dropped and Plaintiff was removed from "mail watch." When Plaintiff arrived at the conference room, Ottensmeier asked him "what's up?" *Id.* Plaintiff explained he planned to end the case if the false charges were dropped and the mail restrictions lifted (Doc. 1, p. 30). Ottensmeier replied the charges had been expunged and he was no longer on mail watch. Plaintiff told his attorney, who relayed the information to presiding Judge Reona J. Daly. Judge Daly paused the proceeding to verify the expungement. She spoke with Defendant John Doe #2, who stated the drug charges had *not* been expunged, were not false, and Plaintiff was still on mail watch because he had received drugs in the mail at a prior institution. Doe #2 knew the drug charges were false and knew Plaintiff was not on mail watch for that reason because of the relevant dates (Doc. 1, p. 30; Doc. 1-1, pp. 11-12, 22-23). After this exchange, Plaintiff no longer wanted to settle the case but did so for fear of retaliation after seeing that Defendants were bold enough to lie to a judge. Plaintiff became depressed, anxious, fearful, and hopeless. Ottensmeier and John Doe #2 conspired to intimidate and lie to force him to settle that case. Wills failed to intervene (Doc. 1, p. 31).

In late May 2023, Plaintiff's friend was stabbed on the prison yard. Intel/I.A. held a white prisoner responsible (Doc. 1, p. 31). About a month later, Plaintiff was called for another "baseless

5

interview." *Id.* Defendant Lauer (Head of Intel) asked Plaintiff if he was staying out of trouble. In response, Plaintiff asked Lauer why he was stuck in the East House high aggression unit (Doc. 1, p. 32). Lauer said Plaintiff should be able to move if his aggression score was low enough, but he should "leave them white boys alone." *Id.* Plaintiff understood Lauer to mean that Plaintiff would be held accountable if anyone in his former gang (the Black Disciples) harmed a white prisoner.

Plaintiff's relatives contacted his counselor about reducing his aggression score and the counselor agreed to do so. However, the counselor never lowered Plaintiff's score and refused to answer Plaintiff's inquiries about the matter. In August 2023, Plaintiff again asked his counselor about the matter. The counselor "acted dumbfounded" and agreed to look into it but never did. Because Intel/I.A. reviews all Plaintiff's messages, he assumed they interfered with his request to lower his aggression score (Doc. 1, p. 32; Doc. 1-2, pp. 12-13). Plaintiff filed a grievance over the issue in approximately August 2023 (Doc. 1, p. 33).

In October 2023, Defendant Robbins, who was a target of Plaintiff's complaints, solicited false information from another prisoner to justify a gang leadership charge against Plaintiff (Doc. 1, p. 33; Doc. 1-1, pp. 25-26). The prisoner refused to give false information. Defendant Schanz charged that prisoner with a drug offense and offered to dismiss the charge in exchange for false information on Plaintiff. Schanz improperly found the inmate guilty and told him to "Tell Plaintiff to show you how good he is with lawsuits" (Doc. 1, p. 33; Doc. 1-1, p. 26).

On November 6, 2023, a fight broke out on the yard among alleged Black Disciples. Plaintiff was not present, but the next day, Defendant McKinney took him to restricted housing under investigation (Doc. 1, pp. 33-34; Doc. 1-1, p. 27). Officers failed to get false information against Plaintiff but still refused to release him. On November 14, 2023 Ottensmeier charged

6

Plaintiff with "conspiracy to commit violent assault" and "security threat group" for an unrelated incident even though Plaintiff was never interviewed about the matter, in violation of prison rules (Doc. 1, p. 34; Doc. 1-1, pp. 29-31). Ottensmeier blocked Plaintiff's message to Ms. Hatton about the charges. Plaintiff mailed his written defense to the charges to the adjustment committee, counselor, Warden, and the Administrative Review Board ("ARB") (Doc. 1, p. 34). However, John Doe #3 removed the postage voucher so the document could not reach the counselor (Doc. 1-1, pp. 33-34). Defendant Walker conducted the disciplinary hearing and found Plaintiff guilty even though Plaintiff explained he couldn't present a real defense because the disciplinary report did not identify the victim, co-conspirator, date, time, or location of the incident (Doc. 1, p. 35). Walker and Ottensmeier conspired to find Plaintiff guilty (Doc. 1-1, pp. 36-37). Plaintiff was punished with three months segregation as well as other restrictions.

In November and December 2023, Plaintiff was the target of further retaliation after he filed a grievance on November 28, 2023 over the guilty finding on Ottensmeier's false charges (Doc. 1, pp. 37-38; Doc. 1-1, p. 38). Ottensmeier blocked Plaintiff's outgoing electronic messages to his loved ones on November 29, 2023. John Doe #4 tampered with Plaintiff's incoming mail and failed to deliver it. Ottensmeier changed Plaintiff's phone access code, preventing him from calling home. John Doe #3 damaged Plaintiff's property (which he confiscated when Plaintiff was moved to restricted housing in early November), returning it in early December with shampoo poured over Plaintiff's mail and photos. On December 15, 2023, Plaintiff was moved from restricted housing into administrative detention based on a report by Ottensmeier (Doc. 1, p. 38; Doc. 1-1, p. 42). Wills failed to intervene to stop these retaliatory acts (Doc. 1 p. 39).

Ottensmeier's December 15, 2023 administrative detention report contained misleading and false information on Plaintiff's past disciplinary history (Doc. 1, p. 39). Plaintiff prepared a

written defense for the hearing on his placement in administrative detention, which Ottensmeier initially refused to collect.  When Ottensmeier picked up Plaintiff's written defense, he told Plaintiff it wouldn't matter since "we [are] everywhere" and any grievances would go through him (Doc. 1, p. 40).  Ottensmeier personally handled all the mail for those housed in administrative detention and told Plaintiff he was barred from outgoing electronic messages even though that did not comply with prison rules, and admitted he singled out Plaintiff to change his phone access code (Doc. 1, pp. 40-41).

Lauer, who had been promoted to a position in Springfield, sat on the review panel for Plaintiff's administrative detention placement at a December 20, 2023 video hearing.  Ottensmeier and Shamoney were in the room with Plaintiff during the hearing (Doc. 1, p. 42).  Lauer agreed to Plaintiff's request for a polygraph test regarding the three previous false charges relied on in the administrative detention placement report.  Plaintiff reminded Lauer that he and Ottensmeier had agreed in May 2022 not to file petty or false charges on Plaintiff if he stopped filing complaints. Lauer acknowledged that discussion but said nobody was filing false charges.

The next day, December 21, 2023, Plaintiff signed the consent for the polygraph test in the presence of Ottensmeier and Shamoney, who gloated about placing Lauer on the hearing panel. That evening, Plaintiff discovered Ottensmeier had changed/invalidated three of his phone access codes.  Plaintiff used the last of his codes on December 25, 2023 to call his family.  On December 28, 2023, Ottensmeier wrote Plaintiff a ticket for using the phone.  Ottensmeier then yelled to another prisoner that he had to write up that individual too because he wrote up Plaintiff, and it would be like this "as long as attorney Brown is here" (Doc. 1, p. 43).  Ottensmeier told Plaintiff that Spiller, the former head of Menard Intel who was promoted to Springfield, had denied Plaintiff's polygraph test, remarking, "Nice try" (Doc. 1 p. 44).

The committee approved Plaintiff's administrative detention placement.  He continued to be held in "extreme isolation" nearly 24 hours per day, with no yard, religious services, no contact visits, and no way to know how long he would remain there or how to earn his way out.  He became depressed, suicidal, and feared for his life due to rumors that other inmates believed Ottensmeier's false reports blaming Plaintiff for assaults on members of his former gang (Doc. 1, p. 44).

In early January 2024, Plaintiff learned Ottensmeier had offered to release another prisoner from administrative detention and transfer him to a prison of his choice if that prisoner could get proof that Plaintiff was a drug dealer and gang leader (Doc. 1, p. 45).  Ottensmeier told the prisoner his plan was supported by McCarthy, Lauer, and Spiller, who were promoted to Springfield from Menard.  When the other prisoner stated he had no such information on Plaintiff, Ottensmeier asked him to pretend to have that knowledge (Doc. 1, p. 46).  The prisoner declined, but Ottensmeier reminded him of the offer whenever he later complained about being in administrative detention.

On approximately January 11, 2024, another prisoner, who was facing a drug charge filed by Ottensmeier, told Plaintiff that Ottensmeier said he could get drugs from Plaintiff (Doc. 1, p. 47).  This comment fueled the rumors that Plaintiff was a drug dealer, which began with the earlier false drug charges against Plaintiff and continued the pattern of retaliation for Plaintiff's grievances against Intel/I.A. officers.

Based on the allegations in the Complaint, the Court designates the following claims in this *pro se* action:

Count 1:    First Amendment claim against Ottensmeier, Lauer, Curry, Bohnert, and Schoenbeck for sending Plaintiff to restricted housing and bringing petty disciplinary charges, and against Doe #1 for ransacking Plaintiff's cell, all in May 2022, as retaliation for Plaintiff's grievances and awareness campaign and to deter him from continuing it; and against Wills for failing to intervene to stop

9

the retaliation.

Count 2:    First Amendment and Eighth Amendment claims against Ottensmeier and Lauer for causing Plaintiff to be labeled as a snitch by repeatedly calling him for Intel/I.A. interviews between May 2022 and October 2023, in retaliation for Plaintiff's complaints, and against Wills for failing to intervene.

Count 3:    First Amendment claim against Lauer, Ottensmeier, and Bohnert for delaying Plaintiff's mail and preventing him from obtaining a prison job from May 2022 through January 2023 in retaliation for Plaintiff's earlier complaints and the awareness campaign, and against Wills for failing to stop the retaliation.

Count 4:    First Amendment retaliation claim and Eighth Amendment claim against Ottensmeier and John Doe #2 for intimidating Plaintiff into settling his claims in *Brown v. Childs*, No. 20-cv-1348-RJD, and against Wills for failing to intervene.

Count 5:    First Amendment retaliation claims prompted by Plaintiff's August 2023 grievance, and Eighth Amendment claims, against Lauer for verbal harassment, against Robbins and Schanz for soliciting false information against Plaintiff, against McKinney for placing Plaintiff in restricted housing, against Ottensmeier for refusing to interview Plaintiff before bringing false charges and for blocking his electronic message, against John Doe #3 for tampering with Plaintiff's mail, against Walker and Ottensmeier for finding Plaintiff guilty on false charges after a sham hearing, and against Wills for failing to intervene to stop the retaliatory acts.

Count 6:    First Amendment retaliation claims prompted by Plaintiff's November 28, 2023 grievance and earlier complaints, against Ottensmeier for blocking Plaintiff's messages, restricting his phone access, and sending him to administrative detention, against John Doe #3 for damaging Plaintiff's property, against John Doe #4 for tampering with Plaintiff's mail, and against Wills for failing to intervene.

Count 7:    First Amendment retaliation claim and Fourteenth Amendment claims against Ottensmeier for falsifying the December 15, 2023 administrative detention report, restricting Plaintiff's phone access, and filing a petty disciplinary charge; against Ottensmeier, Shamoney, and Lauer for denying Plaintiff a fair and impartial administrative detention hearing; Eighth Amendment claim against Ottensmeier for endangering Plaintiff; and claims against Wills for failing to intervene.

Count 8:        First Amendment retaliation claim and *Monell* claim against Ottensmeier, Lauer, McCarthy, Spiller, Wills, and the Intel/I.A. Supervisor for practicing the unofficial custom of soliciting false information from prisoner in exchange for favors, falsifying charges in retaliation and as a tool to obtain promotions.

Count 9:        First Amendment and Eighth Amendment claims against Ottensmeier for defaming Plaintiff by falsely telling another prisoner that Plaintiff is a drug dealer, and against Wills for failing to intervene to stop the retaliation.

Count 10:       State law claim for intentional infliction of emotional distress against Ottensmeier, Lauer, Bohnert, Curry, John Doe #1, Schoenbeck, and Wills based on the allegations in Count 1; against Ottensmeier and John Doe #2 based on the allegations in Count 4; against Lauer based on the allegations in Count 5; against Ottensmeier and John Doe #3 based on the allegations in Count 6; and against Ottensmeier based on the allegations in Count 7.

Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

### Discussion

### Count 1

Prison officials may not retaliate against inmates for filing grievances, lawsuits, or otherwise complaining about their conditions of confinement. *See, e.g.*, *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002). "A complaint states a claim for retaliation when it sets forth 'a chronology of events from which retaliation may plausibly be inferred.'" *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000) (citation omitted).

11

Here, Plaintiff describes several adverse actions he claims were taken against him after he filed grievances and sought information to challenge the allegedly false 2021 disciplinary charges and ensuing punishment. He further alleges retaliatory acts were prompted by his friend's public awareness campaign and their correspondence regarding the FOIA request. Plaintiff's First Amendment activity allegedly triggered the May 2022 blocking of his sister's electronic message, John Doe #1's ransacking of his cell, Curry's placement of Plaintiff under investigation in restricted housing, Bohnert's disciplinary report (filed after Ottensmeier and Lauer indicated Plaintiff would be left alone if he discontinued the awareness campaign, but it did not end), and Schoenbeck's verbal reprimand on the ticket. This chronology of events supports the retaliation claims against John Doe #1, Curry, Bohnert, Ottensmeier, Lauer, and Schoenbeck in Count 1.

However, Plaintiff fails to state a viable retaliation claim against Defendant Wills. Plaintiff alleges he asked Wills to stop the Intel/I.A. officers' retaliatory delays and non-delivery of his mail in February and/or March 2022, but Wills did nothing. That alleged conversation predated the retaliatory actions Plaintiff claims occurred in May 2022, and Plaintiff does not claim that Wills participated in or was aware of the other defendants' actions described above. "[T]o be held individually liable, a defendant must be 'personally responsible for the deprivation of a constitutional right.'" *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). Accordingly, Wills will be dismissed from Count 1.

### Count 2

Plaintiff may proceed on the First Amendment claim against Lauer and Ottensmeier for their frequent interviews of him between May 2022 and October 2023, allegedly in retaliation for Plaintiff's grievances and complaints. Plaintiff also asserts these interviews violated the Eighth

Amendment by creating suspicion among other inmates that he was an informant, placing him in danger of physical harm.  To state an Eighth Amendment claim, a plaintiff must plead facts suggesting he is incarcerated under conditions that create an excessive risk to his health or safety, and the defendants acted with "deliberate indifference" to that risk.  *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).  The reckless exposure of a prisoner to a substantial risk of serious physical injury may amount to an Eighth Amendment violation.  *Smith v. Peters*, 631 F.3d 418, 421 (7th Cir. 2011) (citation omitted); *see also Wright v. Miller*, 561 F. App'x 551, 555 (7th Cir. 2014).

Here, Plaintiff alleges Ottensmeier and Lauer, after asking him in May 2022 whether he had ever been accused of being a "snitch," intentionally placed him at heightened risk by repeatedly calling him for interviews during the next year and a half.  As a result, some inmates suspected Plaintiff was a snitch.  Given these allegations, Plaintiff may also proceed with his Eighth Amendment claim against Lauer and Ottensmeier in Count 2.  However, Plaintiff fails to state a claim in Count 2 against Wills because he pleads no factual allegations suggesting Wills participated in Ottensmeier's or Lauer's conduct.  Therefore, Wills will be dismissed from Count 2.

**Count 3**

This First Amendment claim may proceed on Plaintiff's allegations that Lauer, Ottensmeier, and Bohnert delayed his mail and blacklisted him from prison employment from May 2022 through January 2023, in retaliation for Plaintiff's grievances, complaints, and the awareness campaign.  However, because Plaintiff's factual allegations fail to connect Wills to this activity, Wills will be dismissed from the claim.  Count 3 will proceed only against Lauer, Ottensmeier, and Bohnert.

## Count 4

Ottensmeier's alleged retaliatory act was falsely telling Plaintiff that his drug-related disciplinary charge had been dropped and he was no longer on "mail watch." Plaintiff was willing to settle his case (*Brown v. Childs*) if this information was true. During Plaintiff's settlement conference, the judge spoke to John Doe #2, who stated the drug charges had not been dropped and the mail watch was still in effect. Plaintiff asserts he did not want to settle the case, but ultimately did settle because he feared more retaliation and because he believed Ottensmeier and Doe #2 conspired to intimidate and lie to him to force a settlement.

A colorable retaliation claim requires allegations indicating that Plaintiff "suffered a deprivation that would likely deter First Amendment activity in the future[.]" *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). The allegations in Count 4 do not describe a deprivation or adverse action likely to deter future First Amendment activity. While Ottensmeier and John Doe #2 allegedly lied to Plaintiff and/or created confusion about the status of his disciplinary record and mail restriction, Plaintiff does not have a constitutional right to receive truthful information from prison officials. Plaintiff's assertion that he felt intimidated and feared future retaliation does not elevate the defendants' speech to an adverse retaliatory action that violated his First Amendment rights. Nor did the defendants' private remarks place Plaintiff in danger that could implicate the Eighth Amendment. For these reasons, Count 4 will be dismissed.

## Count 5

Plaintiff claims his August 2023 grievance over officials' refusal to lower his aggression score prompted another round of retaliatory actions which violated the Eighth Amendment. Lauer's alleged comment in approximately June 2023, indicating Plaintiff might be held accountable if another attack occurred by a Black Disciple against a white prisoner, took place

14

before Plaintiff filed the August 2023 grievance.  Because these facts do not support a retaliation claim or an Eighth Amendment violation, Lauer will be dismissed from Count 5.

Plaintiff sufficiently alleges retaliation for the August 2023 grievance by Robbins and Schanz for soliciting false information in an attempt to file gang-related disciplinary charge(s) against him; by McKinney for transferring Plaintiff to restricted housing after the November 6, 2023 fight among other inmates; by Ottensmeier for filing allegedly false charges against Plaintiff on November 14, 2023 and for blocking Plaintiff's message about the matter (Plaintiff's allegation that Ottensmeier violated prison rules by failing to interview him before filing the charges does not amount to a constitutional violation.  *Courtney v. Butler*, 66 F.4th 1043, 1052-53 (7th Cir. 2023)); against Walker and Ottensmeier for holding an allegedly sham hearing and finding Plaintiff guilty on those false charges; and against John Doe #3 for tampering with Plaintiff's mail. These retaliation claims will proceed in Count 5.  However, these allegations do not rise to the level of cruel or unusual punishment. Consequently, the Eighth Amendment portion of Count 5 will be dismissed.  Likewise, Wills will be dismissed from Count 5 because no factual allegations suggest he was personally involved in the conduct Plaintiff complains of.

**Count 6**

Plaintiff alleges that his grievance of November 28, 2023, after he was found guilty on the charges filed by Ottensmeier, led to more retaliation including Ottensmeier's adverse actions of allegedly blocking Plaintiff's electronic messages, restricting his phone access, and authoring a report that sent Plaintiff to administrative detention.  Additionally, John Doe #3 allegedly damaged Plaintiff's personal property by pouring shampoo over it, and John Doe #4 tampered with and failed to deliver Plaintiff's mail.  Based on these allegations, the retaliation claims in Count 6 may proceed. However, because Plaintiff fails to allege that Wills was aware of this conduct or

participated in it, he will be dismissed from Count 6.

### Count 7

Plaintiff sufficiently pleads a First Amendment claim against Ottensmeier for allegedly sending him to administrative segregation based on false information, restricting his telephone access, and issuing him a ticket for using the phone, in retaliation for his grievance activity. However, the allegations fail to support a claim that Ottensmeier's conduct endangered Plaintiff in violation of the Eighth Amendment.

Further, these allegations and Plaintiff's assertion that he was denied a fair and impartial administrative detention hearing do not state a Fourteenth Amendment due process claim. To maintain a due process claim, a protected liberty interest must be at stake – and there is no such interest in avoiding placement in administrative or discretionary segregation. *Townsend v. Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008) (collecting cases).

The Fourteenth Amendment portion of Count 7 against Ottensmeier, Shamoney, and Lauer will therefore be dismissed.   Wills will also be dismissed from Count 7 because no factual allegations connect him to Ottensmeier's alleged retaliation.  Count 7 will proceed only on the First Amendment retaliation claim against Ottensmeier.

### Count 8

Plaintiff invokes *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978) for his claim that defendants practiced an "unofficial custom of soliciting false information from prisoners in exchange for favors/relief" (Doc. 1, p. 46).  However, a § 1983 policy/practice/custom claim brought pursuant to *Monell* may only proceed against a local government unit, not against a state agency such as the Illinois Department of Corrections.  As such, Plaintiff's *Monell* claim fails; Lauer, McCarthy, Spiller, Wills, and the Intel/I.A. Supervisor will be dismissed from Count 8.

However, Plaintiff may proceed on a First Amendment retaliation claim in Count 8 against Ottensmeier for allegedly soliciting false information in approximately January 2024 from another prisoner in administrative detention, in an attempt to charge Plaintiff with drug and gang offenses.

**Count 9**

The allegation that Ottensmeier falsely told another prisoner that Plaintiff deals drugs, in retaliation for Plaintiff's grievance activity, survives § 1915A review as a First Amendment retaliation claim. However, the Complaint allegations do not support an Eighth Amendment claim for this conduct, nor do they state a claim against Wills. Therefore, those portions of Count 9 will be dismissed.

**Count 10**

Under Illinois law, a plaintiff claiming intentional infliction of emotional distress must plead facts suggesting the defendant(s) intentionally or recklessly engaged in "extreme and outrageous conduct" that resulted in severe emotional distress. *Somberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1030 (7th Cir. 2006); *see Lopez v. City of Chi.*, 464 F.3d 711, 720 (7th Cir. 2006). The tort has three components: (1) the conduct involved must be truly extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress; and (3) the conduct must in fact cause severe emotional distress. *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988).

Plaintiff's allegations against Lauer, Ottensmeier, Curry, Bohnert, Schoenbeck, and John Doe #1 in Count 1; against Ottensmeier and John Doe #3 in Count 6; and against Ottensmeier in Count 7 satisfy this pleading standard. Because the emotional distress claims derive from the same facts underlying the surviving federal claims in Counts 1, 6, and 7, they may be brought in this

case. 28 U.S.C. § 1367(a); *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008). Accordingly, Count 10 will proceed against Lauer, Ottensmeier, Curry, Bohnert, Schoenbeck, John Doe #1, and John Doe #3, based on the conduct described in Counts 1, 6, and 7.

### Unknown/John/Jane Doe Defendants

Plaintiff is responsible for securing information aimed at identifying the Unknown/John Doe Defendants #1, #3, and #4, in accordance with the John/Jane Doe Identification Order that will be entered separately. Once the names of the unknown defendants are obtained, Plaintiff must file a motion to substitute the newly identified defendants in place of the generic designations in the case caption and throughout the Complaint. Anthony Wills, Warden of Menard Correctional Center, will remain as a defendant in his official capacity only, for the purpose of responding to Plaintiff's requests for information regarding the identity of the Unknown Defendants.

### Disposition

The Complaint states colorable claims as described above: in Count 1 against Lauer, Ottensmeier, Curry, Bohnert, Schoenbeck, and John Doe #1; in Count 2 against Lauer and Ottensmeier; in Count 3 against Lauer, Ottensmeier, and Bohnert; in Count 5 against Ottensmeier, Schanz, McKinney, Robbins, Walker, and John Doe #3; in Count 6 against Ottensmeier, John Doe #3, and John Doe #4; in Counts 7, 8, and 9 against Ottensmeier for retaliation; and in Count 10 against Lauer, Ottensmeier, Curry, Bohnert, Schoenbeck, John Doe #1, and John Doe #3.

Count 4 and Defendants Spiller, McCarthy, Shamoney, John Doe #2, and all individual capacity claims against Anthony Wills, are **DISMISSED** without prejudice.

The Clerk shall prepare for Corey Lauer, Marcelus Ottensmeier, G. Curry, Jerod Schanz, Devin McKinney, Lucas Bohnert, Robbins, Joshua Schoenbeck, Sandy Walker, and Menard Warden Anthony Wills (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to

18

Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).  **Pursuant to Administrative Order No. 244 and Local Rule 8.2, Defendants need only respond to the issues stated in this Merit Review Order**.  Menard Warden Wills need only appear in this matter and need not answer the Complaint.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **14 days**

after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

Finally, based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

**IT IS SO ORDERED.**

**DATED:  June 3, 2026**

**STACI M. YANDLE**
**Chief U.S. District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendants will enter an appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the Defendants' Answer, but it is entirely possible that it will take **90 days** or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.